**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**REFUGIO REYES et al.**                                                           **PLAINTIFFS**

**v.**                                     **Case No.: 4:21-cv-00334-LPR**

**CARL BAYNE et al.**                                                              **DEFENDANTS**

## ORDER

Before the Court are Plaintiffs' Motion for Preliminary Injunction and Defendants' Motion to Dismiss.[1]  Plaintiffs' Motion for Preliminary Injunction is DENIED.  Defendants' Motion to Dismiss is GRANTED in PART, DENIED in PART, and HELD IN ABEYANCE in PART.  Because of the emergency nature of a request for a preliminary injunction, the Court has decided that the most efficient way to proceed is to address in this Order only the claims that affect the Motion for Preliminary Injunction.  The Court will address the claims that do not affect the preliminary injunction request as part of a subsequent order.

## I. BACKGROUND

Arkansas law generally requires employers with three or more employees to have workers' compensation insurance coverage.[2]  Arkansas law authorizes the Arkansas Workers' Compensation Commission ("AWCC") to assess civil penalties of up to $10,000 for non-

---

[1] Pls.' Mot. for Prelim. Inj. (Doc. 2); Defs.' Mot. to Dismiss (Doc. 6).

[2] *See* Ark. Code Ann. § 11-9-404(a)(1) ("Every employer shall secure the payment of compensation under this chapter: By insuring and keeping insured the payment of the compensation with any carrier authorized to write workers' compensation insurance."); *id.* § 11-9-102(10) ("As used in this chapter: 'Employer' means any individual, partnership, limited liability company, association, or corporation carrying on any employment . . . ."); *id.* § 11-9-102(11)(A) ("'Employment' means: Every employment in the state in which three (3) or more employees are regularly employed by the same employer in the course of business . . . .").

compliance with the coverage requirement.[3]  Also, employers can be found "guilty of a Class D felony" for failing to comply with workers' compensation requirements.[4]  The AWCC can refer cases to a prosecutor for criminal prosecution.[5]

Whenever the AWCC has "reason to believe" that an employer has violated the workers' compensation requirements, the AWCC "shall serve upon the employer a proposed order declaring the employer to be in violation of this chapter and containing the amount, if any, of the civil penalty to be assessed against the employer."[6]  An employer may contest a proposed order by filing a written request for a hearing within twenty days of receipt of the proposed order.[7]  If a written request for a hearing is not filed within twenty days, "the proposed order, the proposed penalty, or both, shall be a final order of the commission and shall not be subject to further review by any court."[8]  "A proposed order by the commission pursuant to this section is prima facie correct, and the burden is upon the employer to prove that the proposed order is incorrect."[9]

If an employer properly contests a proposed order by timely requesting a hearing, and the AWCC issues a final order that the employer wishes to appeal, the employer must file a notice of

---

[3] *Id.* § 11-9-207(a)(8); *id.* § 11-9-406(a)(1) ("Any employer required to secure the payment of compensation under this chapter who fails to secure compensation shall be subject to a fine of up to ten thousand dollars ($10,000) as determined by the Workers' Compensation Commission . . . .").

[4] *Id.* § 11-9-406(a)(1).

[5] *Id.* § 11-9-106(c)(3).

[6] *Id.* § 11-9-406(b)(1).  "The commission may assess a fine against an employer who fails to secure the payment of compensation in an amount up to one thousand dollars ($1,000) per day of violation . . . ." *Id.* § 11-9-406(b)(5).  "If an employer fails to . . . pay any civil penalty assessed against the employer after an order issued pursuant to this section has become final by operation of law or upon appeal, the commission may petition the Pulaski County Circuit Court or of the county where the employer's principal place of business is located for an order enjoining the employer from engaging in further employment until such time as the employer . . . makes full payment of all civil penalties." *Id.* § 11-9-406(b)(6).

[7] *Id.* § 11-9-406(b)(2)(A).

[8] *Id.* § 11-9-406(b)(2)(C).

[9] *Id.* § 11-9-406(b)(2)(D).

appeal to the Court of Appeals within thirty days of receipt of the order.[10] "The Court of Appeals shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the order or award, upon any of the following grounds, and no other:

(A) That the commission acted without or in excess of its powers;

(B) That the order or award was procured by fraud;

(C) That the facts found by the commission do not support the order or award; or

(D) That the order or award was not supported by substantial evidence of record.[11]

Plaintiffs are Arkansas residents who own and operate restaurants and other corporate entities in Arkansas.[12] Defendants are officials at the AWCC.[13] Defendants initiated investigations against Plaintiffs and 75 corporate entities allegedly owned or partially owned by Plaintiffs based on Defendants' belief that Plaintiffs failed to maintain workers' compensation insurance coverage as required by Arkansas law.[14]

### A. AWCC's Initial Investigation and the Proposed Order

The investigations began when AWCC investigator Patrick Neal uncovered nine restaurants associated with Plaintiff Refugio Reyes that Investigator Neal "could not find proof of [workers' compensation insurance] coverage for."[15] Investigator Neal referred the case to Defendant Carl Bayne, who is the Director of Operations and Compliance at the AWCC.[16] After being alerted to the possible lack of coverage, Defendant Bayne "started [his] own procedure and

---

[10] *Id.* § 11-9-711(b)(1); *id.* § 11-9-406(b)(4) ("Hearings conducted under this section shall proceed as provided in §§ 11-9-704–11-9-711.").

[11] *Id.* § 11-9-711(b)(4).

[12] Pls.' Am. Compl. (Doc. 25) ¶ 2.

[13] *Id.* ¶¶ 1, 5.

[14] Tr. of May 25, 2021 Hr'g at 24.

[15] *Id.*

[16] *Id.* at 23.

did what [he does] to find the people who were associated with Mr. Reyes, and it just grew."[17] Defendant Bayne started his investigation "by using material that is available publicly."[18] He first searched the Arkansas Secretary of State's website for entities that listed Plaintiff Reyes as a registered agent.[19] During this search, "32 businesses came up, which far exceeded the nine that Mr. Neal had been talking about."[20]

Defendant Bayne then searched the National Council of Compensation Insurers ("NCCI") database to check if the 32 businesses associated with Plaintiff Reyes had workers' compensation coverage.[21] Defendant Bayne explained that "when [he] find[s] the business that's listed with the Secretary of State that does not or has not had workers' compensation coverage, [he] open[s] an investigation."[22] Defendant Bayne also explained how he investigates whether an entity is an employer.[23] He stated that he searches social media sites such as Facebook and Instagram to try to find phone numbers for the entities.[24] If he finds a number, he would "call and see if someone answers" to determine if the business was an employer.[25] If he could not find a social media profile or a phone number, he would "have to ask that registered agent, 'Are you an employer?'"[26]

---

[17] *Id.* at 24; *see also* Pls.' Am. Compl. (Doc. 25) ¶ 9 (alleging that "Defendant Bayne initiated 75 alleged 'investigations' against Plaintiffs . . . .").

[18] Tr. of May 25, 2021 Hr'g at 25.

[19] *Id.*; Pls.' Am. Compl. (Doc. 25) ¶ 10.

[20] Tr. of May 25, 2021 Hr'g at 25.

[21] *Id.* at 25.

[22] *Id.* at 26.

[23] *Id.*

[24] *Id.*; *accord* Pls.' Am. Compl. (Doc. 25) ¶ 10.

[25] Tr. of May 25, 2021 Hr'g at 26.

[26] *Id.* Plaintiffs assert that "Defendant Bayne never contacted Plaintiffs during his investigations." Pls.' Am. Compl. (Doc. 25) ¶ 10.

After he completed the investigation, Defendant Bayne "went to the [administrative law judges] and asked for a proposed order to be sent."[27] A proposed order (the "Proposed Order") was sent to Plaintiff Reyes individually and doing business as 32 entities.[28] A letter accompanying the Proposed Order informed Plaintiff Reyes that he and the entities were being investigated by the AWCC for failure to comply with workers' compensation laws.[29] The letter stated that the failure of Mr. Reyes to request a hearing to contest the Proposed Order within 20 days would "result in the Order becoming final and not subject to further review."[30] The letter also informed Plaintiff Reyes that, pursuant to ACA § 11-9-406(a)(1), he could:

> be assessed by the Commission a fine of $1,000.00 for each day each business was out of compliance, for a maximum fine of $10,000.00 for each business named in this investigation. That subsection also declares your non-compliance to be a Class D Felony, which carries a maximum penalty of a $10,000.00 fine . . . and imprisonment not to exceed six (6) years.[31]

The Proposed Order stated that "the Arkansas Workers' Compensation Commission has reason to believe that the above-named Employer failed to maintain and secure the payment of compensation, and for such failure is hereby assessed a fine of Three-Hundred and Twenty Thousand Dollars ($320,000.00)."[32] The Proposed Order stated that it "shall become final twenty (20) days after Employer's receipt, unless a written request for a hearing is filed with this Commission."[33] The Proposed Order stated that, if Plaintiff Reyes requested a hearing, he would "be permitted to appear and show cause, if any there be, why Employer should not be required to

---

[27] Tr. of May 25, 2021 Hr'g at 27; *accord* Pls.' Am. Compl. (Doc. 25) ¶ 11.

[28] Tr. of May 25, 2021 Hr'g at 39; *accord* Ex. B (Proposed Order) to Pls.' Compl. (Doc. 1) at 13–14.

[29] Ex. B (Proposed Order) to Pls.' Compl. (Doc. 1) at 14.

[30] *Id.*

[31] *Id.*

[32] *Id.* at 18.

[33] *Id.* at 19.

maintain workers' compensation insurance and/or pay the penalty assessed herein."[34]  It also stated that a written request for a hearing "must specify the grounds upon which Employer contests the proposed Order, the proposed assessment, or both."[35]  Other Plaintiffs received proposed orders similar to the one Plaintiff Reyes received.[36]

### B. Plaintiffs' Response to the Proposed Order

Through counsel, Plaintiffs requested hearings.[37]  Plaintiffs' hearings were scheduled for Monday, April 26, 2021.[38]  Plaintiffs' accountant "assisted"[39] in preparing an Excel spreadsheet that contained  a "Company – Employee Status" column, which contained entries such as "Please see highest number of employees" (referring to another column titled "Highest # of Employees"), "This company has provided proof of current coverage," "This company never had employees," and "This company has been dissolved."[40]

Plaintiffs' accountant also sent letters to the AWCC "regarding each of the entities and what they were and a brief description of whether they had employees, no employees or whether they were dissolved or still operating."[41]  These letters, however, did not "provide official certified letters of dissolution of each one of these entities that [he] claim[ed] were dissolved."[42]  The accountant sent only "8 or 10 letters for entities" on Plaintiff Reyes' behalf, which meant

---

[34] *Id.*

[35] *Id.*

[36] Tr. of May 25, 2021 Hr'g at 29.

[37] *Id.* at 44; *accord* Pls.' Am. Compl. (Doc. 25) ¶ 14.

[38] Tr. of May 25, 2021 Hr'g at 44; *accord* Pls.' Am. Compl. (Doc. 25) ¶ 14.

[39] Tr. of May 25, 2021 Hr'g at 8.

[40] Ex. A (Spreadsheet) to Pls.' Compl. (Doc. 1) at 12.

[41] Tr. of May 25, 2021 Hr'g at 9.

[42] *Id.* at 16–17.

Defendant Bayne was "still left with 22 entities potentially that [he] had only [the accountant's] say-so" from the spreadsheet as confirmation.[43]

Defendants "asked for a letter from the accounting firm that said this company was dissolved on this date and it be signed."[44] Defendants "didn't ask for Articles of Dissolution," just a letter signed by the accountant confirming the date of dissolution.[45] On March 25, 2021, Plaintiffs' accountant sent Defendant Bayne an email "saying that the information contained in [the spreadsheet] was accurate."[46] Defendant Bayne "didn't feel that was sufficient" because he had "no idea" what the accountant "wrote on there," or what Plaintiffs' counsel "or anyone else" "added to" it.[47]

Despite Defendants' issues with confirming the spreadsheet information, Defendants, "of their own volition,"[48] decided to dismiss "several dozen" entities "because it was determined that they were not employers."[49] "[T]hat determination [was] based primarily on information that [Defendant Bayne] received from" Plaintiffs' accountant.[50] Before the April 26 hearing was scheduled to take place, Defendant Bayne sent Plaintiffs a case status list that he "was preparing to present to Administrative Law Judge Terry Don Lucy at [the] hearing on April 26 in reference to [Plaintiff] Reyes's businesses."[51] In that list, Defendant Bayne requested that several entities "be dismissed as in [his] zeal to serve the working men and women of Arkansas [he] assigned to

---

[43] *Id.* at 52.

[44] *Id.* at 35.

[45] *Id.*

[46] *Id.* at 35.

[47] *Id.* at 35–36.

[48] *Id.* at 17, 47.

[49] *Id.* at 34; *accord* Pls.' Am. Compl. (Doc. 25) ¶¶ 18–19.

[50] Tr. of May 25, 2021 Hr'g at 35.

[51] *Id.* at 33; *accord* Pls.' Am. Compl. (Doc. 25) ¶18.

Mr. Refugio Reyes a restaurant with which he has nothing to do."[52]  Defendant Bayne requested that several other entities be dismissed as duplicates or DBAs,[53] or because the entities' businesses never opened.[54]

However, there were still other entities Defendants did not recommend dismissing that Plaintiffs claimed (and currently claim) are not employers.  For example, Plaintiffs' accountant told Defendant Bayne that "Cotijas Mexican Restaurant - Hot Spring National Park is a 'fictious(dba) name used by Cuco, Inc.'"[55]  Defendant Bayne did not recommend dismissal because Defendants "have not been informed of what Cotijas Mexican Restaurant - Hot Spring National Park did for three and one-half years before Cuco, Inc. was formed."[56]  Defendant Bayne explained that, "[i]f Mr. Reyes's contention is that this business has never needed workers' compensation coverage, he has not been forthcoming with the facts which would convince me."[57]

### C.  The Instant Federal Case

On April 23, 2021, Plaintiffs filed the instant federal case.[58]  They make several claims.[59] Specifically, Plaintiffs claim that:

- "[t]he AWCC denied Plaintiffs due process by issuing Proposed Orders as a notice without 'reason to believe' that all of the entities in the Proposed Orders are in fact employers under the statute[;]"[60]

---

[52] Ex. C (Case Statuses) to Pls.' Compl. (Doc. 1) at 30–31.

[53] *Id.* at 30–32, 35.

[54] *Id.* at 42–43, 49–51.

[55] *Id.* at 30.

[56] *Id.*

[57] *Id.*

[58] Pls.' Compl. (Doc. 1).

[59] The Court is citing to the Amended Complaint because "[i]t is well-established that an amended complaint super[s]edes an original complaint and renders the original complaint without legal effect."  *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000).

[60] Pls.' Am. Compl. (Doc. 25) ¶ 28.

- "[t]he AWCC denied Plaintiffs due process by providing a defective notice that incorrectly equates a civil penalty violation of Ark. Code Ann. § 11-9-406 with criminal prosecution[;]"[61]

- Ark. Code Ann. § 11-9-406(b)(2)(D) violates due process because it "unconstitutionally shifts the burden of proof to alleged employers to prove Proposed Order are 'incorrect[;]'"[62]

- The AWCC denied Plaintiffs due process "by failing to explain the justification for the maximum penalty for every alleged violation[;]"[63]

- The AWCC denied Plaintiffs due process "by failing to provide individuals and corporations notice and opportunity to cure any alleged violations[;]"[64]

- Defendants violated Plaintiffs' constitutional Equal Protection rights by "target[ing] Plaintiffs and pursu[ing] aggressive investigations against them because of their Latino names, race, and ethnicity" and by treating Plaintiffs differently from the way Defendants "treated similarly situated white business owners[;]"[65] and

- Defendants committed an abuse of process under state law by "continuing to pursue fines against corporate entities which [they] knew or should have known were not employers" in an attempt "to coerce and extort Plaintiffs to waive their defenses, admit to violations and pay full fines for certain [other] entities . . . ."[66]

On April 30, 2021, Plaintiffs filed a Motion for Preliminary Injunction.[67] That Motion requests "a preliminary injunction prohibiting Defendants from enforcing Ark. Code Ann. § 11-9-406 for the reasons stated in [the] Brief in Support."[68] A review of the Brief in Support establishes that Plaintiffs' preliminary injunction request is based on a subset of its overall claims in this

---

[61] *Id.* ¶ 29.

[62] *Id.* ¶ 27.

[63] *Id.* ¶ 30.

[64] *Id.*

[65] *Id.* ¶¶ 36, 38.

[66] *Id.* ¶¶ 44, 46.

[67] Pls.' Mot. for Prelim. Inj. (Doc. 2).

[68] *Id.* at 1.

case.[69]  To be candid, however, because the Brief is not organized by claim, it is something of a Sisyphean task to determine which claims are in play for purposes of the preliminary injunction and which are not.  Instead of organizing the Brief by claim, Plaintiffs organized the Brief by injunctive request.[70]  They ask the Court to:

- "prohibit Defendants from asserting jurisdiction over non-employers";[71]

- "prohibit Defendants from enforcing Ark. Code Ann. § 11-9-406(b)(2)(D)," which states that "[a] proposed order by the commission pursuant to this section is prima facie correct, and the burden is upon the employer to prove that the proposed order is incorrect";[72] and

- "prohibit Defendants from threatening Plaintiffs and other alleged employers with criminal prosecution," or alternatively, to "require Defendants to cease any and all administrative enforcement of Ark. Code Ann. § 11-9-406 and refer any alleged violations to the prosecuting attorney."[73]

The first injunctive request appears linked to Plaintiffs' claims that the AWCC is acting extra-jurisdictionally, depriving Plaintiffs of due process by going after entities despite not having a "reason to believe" those entities are employers as defined by the applicable statute.  Pointing to the case status list prepared by Defendant Bayne, Plaintiffs assert that Defendants have "openly admitted that they have wrongfully prosecuted" entities that were not employers.[74]  Plaintiffs assert that Defendants "attempted to use the continued prosecution against non-employers as leverage against Plaintiffs to pay the full fines requested by Defendants as to the employer entities."[75]

---

[69] For one example, Plaintiffs do not base their preliminary injunction request on their Equal Protection Claims.  Tr. of May 25, 2021 Hr'g at 48–49.

[70] Plaintiffs' Brief in Support of their Motion for Preliminary Injunction failed to expressly analyze the *Dataphase* factors with respect to specific claims.  Pls.' Br. in Supp. of Mot. for Prelim. Inj. (Doc. 3).  And Plaintiffs' Reply Brief did so only cursorily.  *See generally* Pls.' Reply to Defs.' Resp. to Mot. for Prelim. Inj. (Doc. 11).

[71] Pls.' Br. in Supp. of Mot. for Prelim. Inj. (Doc. 3) at 2.

[72] *Id.* at 5.

[73] *Id.* at 6.

[74] *Id.* at 3.

[75] *Id.*

Defendants have since recommended dismissal of those non-employer entities, but Plaintiffs argue that there are still "certain other corporate entities" that "Defendants have no 'reason to believe'" are employers "beyond the Defendants' pure speculation and guesswork. Yet, Defendants still refuse to end their prosecution of those entities."[76] Plaintiffs assert that these various entities had no employees because they (1) are "duplicate corporate entities," (2) "never opened or operated," (3) are "real estate or liquor license holding companies," or (4) were "dissolved or otherwise no longer existing as of the date of the proposed orders."[77] Plaintiffs argue that "this Court should prohibit Defendants from enforcing the proposed orders against said non-employer corporate entities unless and until Defendants demonstrate they have 'reason to believe' said corporate entities are in fact 'employers.'"[78]

The second injunctive request appears linked to Plaintiffs' claim that Ark. Code Ann. § 11-9-406(b)(2)(D) unconstitutionally shifts the burden of proof for one or more essential elements of the civil action onto Plaintiffs. In the Motion, Plaintiffs assert that "[s]hifting the burden of proof to the alleged employer to prove a proposed order under Ark. Code Ann. § 11-9-406 is 'incorrect' violates the Due Process Clause of the U.S. Constitution and Arkansas Constitution."[79]

The third injunctive request appears linked to Plaintiffs' claim that "[t]he AWCC denied Plaintiffs due process by providing a defective notice that incorrectly equates a civil penalty violation of Ark. Code Ann. § 11-9-406 with criminal prosecution."[80] Plaintiffs point to the letter accompanying the Proposed Order, which noted that the same statute (Ark. Code Ann. § 11-9-

---

[76] *Id.* at 3.

[77] *Id.* at 3–4.

[78] *Id.*

[79] *Id.* at 5–6.

[80] Pls.' Am. Compl. (Doc. 25) ¶ 29.

406) that authorizes the AWCC to impose administrative fines for noncompliance "also declares your non-compliance to be a **Class D Felony**, which carries a maximum penalty of a **$10,000.00** fine per ACA § 5-4-201(a)(2), and **imprisonment** not to exceed **six (6) years** per ACA § 5-4-401(a)(5)."[81]  Plaintiffs argue that "the notice is defective because the notice should not include that language."[82]  They argue that Defendants' administrative enforcement of § 11-9-406 does not afford the same procedural and constitutional protections or require the same mental intent element as criminal prosecutions.[83]  They also argue that "[t]here is no reason for the workers' comp commission to include language that asserts a Class D felony and six years of prison time per violation when they never enforce that and they never refer it to the prosecutor."[84]  Plaintiffs assert that the inclusion of the language in the administrative notice letter constitutes a procedural due process violation, arguing that:

- Defendants do not afford Plaintiffs and other alleged employers the same procedural and constitutional protections available in criminal court,

- Defendants assert their administrative enforcement of Ark. Code Ann. § 11-9-406 does not require the requisite mental intent necessary for criminal prosecution, and

- Defendants in practice rarely (or never) refer cases under Ark. Code Ann. § 11-9-406 to the prosecuting attorney.[85]

Defendants argue that Plaintiffs do not satisfy the *Dataphase* factors for a preliminary injunction.[86]  Defendants also ask the Court to dismiss the case for a multitude of reasons, the most prominent of which is their belief that *Younger* abstention applies here.[87]  Plaintiffs argue that the

---

[81] Ex. B (Proposed Order) to Pls.' Compl. (Doc. 1) at 14 (emphasis in original).

[82] Tr. of May 25, 2021 Hr'g at 69.

[83] Pls.' Br. in Supp. of Mot. for Prelim. Inj. (Doc. 3) at 6.

[84] Tr. of May 25, 2021 Hr'g at 69.

[85] Pls.' Br. in Supp. of Mot. for Prelim. Inj. (Doc. 3) at 6.

[86] Defs.' Resp. to Mot. for Prelim. Inj. (Doc. 8).

[87] Defs.' Br. in Supp. of Mot. to Dismiss (Doc. 7) at 8-12.

Court should not abstain because "Plaintiffs would not have a fair or adequate opportunity to assert their constitutional claims in the AWCC's administrative scheme."[88]  Plaintiffs also argue that the bad faith exception to abstention applies in this case.[89]

## II. DISCUSSION

In *Younger v. Harris*, the United States Supreme Court recognized a "national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances."[90]  In determining whether *Younger* abstention is appropriate, courts ask: "(1) whether the action complained of constitutes an ongoing state judicial proceeding; (2) whether the proceedings implicate important state interests; and (3) whether there is an adequate opportunity in the state proceedings to raise constitutional challenges."[91]  "If all three questions are answered affirmatively, a federal court should abstain unless it detects 'bad faith, harassment, or some extraordinary circumstance that would make abstention inappropriate.'"[92]  As noted *supra* in footnote 90, the Eighth Circuit has made clear that ongoing state administrative proceedings can also be grounds for *Younger* abstention.  The standard is the same.

Plaintiffs' first due process claim is that the AWCC is acting extra-jurisdictionally by investigating, issuing proposed Orders against, and potentially issuing final Orders against entities and persons that are not employers, including entities and persons that AWCC does not even have reason to believe are employers.[93]  This is a simple question of the AWCC's jurisdictional scope.

---

[88] Pls.' Reply to Mot. for Prelim. Inj. (Doc. 11) at 2.

[89] *Id.* at 3.

[90] *Younger v. Harris*, 401 U.S. 37, 41 (1971).  *Younger* involved a pending state criminal proceeding, but "[t]he Court has also found *Younger* applicable to pending state administrative proceedings."  *Ronwin v. Dunham*, 818 F.2d 675, 677 (8th Cir. 1987) (citing *Ohio Civil rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619 (1986)).

[91] *Night Clubs, Inc. v. City of Fort Smith, Ark.*, 163 F.3d 475, 479 (8th Cir. 1998).

[92] *Id.* (quoting *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431–32 (1982)).

[93] Pls.' Br. in Supp. of Mot. for Prelim. Inj. (Doc. 3) at 2.

Plaintiffs believe the AWCC has exceeded its jurisdiction because the entities and people it has proceeded against are not employers as that term is used in the applicable statute. The AWCC believes that the entities and people it plans to proceed against are employers as that term is used in the applicable statute. Despite the Plaintiffs' creative characterization of their claim, it is far from clear that such a question—determining the bounds of AWCC's jurisdiction—implicates the federal due process clause.[94]

In any event, the Court concludes that *Younger* abstention is appropriate on this claim. No one seriously disputes that there is an ongoing state proceeding on this matter.[95] And no one seriously disputes that the proceeding implicates an important state interest. Arkansas has an important interest in enforcing its workers' compensation laws.[96] To the extent Plaintiffs argue that they do not have an adequate opportunity to raise this issue in the state proceedings, they are wrong. Under Ark. Code. Ann. § 11-9-711(b)(4), the Arkansas Court of Appeals "shall review . . . questions of law" and may reverse, remand, or set aside an order because, *inter alia*, "the

---

[94] At the motion hearing, the Court asked how a simple state subject matter jurisdiction dispute can result in a federal due process violation. Tr. of May 25, 2021 Hr'g at 71. The Court also expressed concern that "if a federal court was to step in every time a state court asserted jurisdiction over somebody that ultimately it didn't have jurisdiction over, we would be mucking around a lot in state court and state administrative proceedings." *Id.* Plaintiffs could not point to caselaw supporting their theory. *Id.* at 72. When pressed, Plaintiffs argued that "it's unconstitutional" "when you tie it…to the burden of proof" issue. *Id.* at 73. The Court has significant doubts about whether it has jurisdiction over this matter.

[95] *See Cedar Rapids Cellular Tel., L.P. v. Miller*, 280 F.3d 874, 882 (8th Cir. 2002) ("Administrative proceedings may be judicial for purposes of *Younger* if they 'declare and enforce liabilities' between the parties.") (quoting *Yamaha Motor Corp., U.S.A. v. Stroud*, 179 F.3d 598, 602–3 (8th Cir.1999)). In Plaintiffs' Amended Complaint, they suggest that there is no ongoing state administrative proceeding with respect to the entities that have now been dismissed from the state proceeding by the AWCC. But there's no suggestion that any one of the named Plaintiffs have had all of their entities dismissed from the relevant AWCC cases. Even if there were such a Plaintiff, that Plaintiff cannot possibly be at risk of suffering future irreparable harm. So a preliminary injunction would surely not be appropriate as to that Plaintiff. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

[96] *See Fuller v. Ulland*, 76 F.3d 957, 959 (8th Cir. 1996) ("The first two requirements of *Younger* abstention are clearly satisfied here. The state civil enforcement proceeding was ongoing at the time the suit was filed, and the state's interest in enforcing its [workers' compensation] insurance laws is important.") (citation omitted); *Fuller v. Ulland*, 858 F. Supp. 931, 935 (D. Minn. 1994) ("The state proceedings now under way implicate Minnesota's important state interest in effectuating its insurance laws and related regulatory schemes, particularly those relating to the provision of workers compensation insurance . . .").

Commission acted without or in excess of its powers" or "the order . . . was not supported by substantial evidence of record." If the AWCC enters a final Order against an entity or person that is not an employer, it would be acting in excess of its powers, an issue which the law expressly allows to be litigated in the Court of Appeals.[97] Also, such an Order would be "not supported by substantial evidence of record," another express ground that can be litigated in the Court of Appeals.[98]

The Court does not detect "bad faith, harassment, or some extraordinary circumstance that would make abstention inappropriate."[99] Plaintiffs do assert that Defendants "attempted to use the continued prosecution against non-employers as leverage against Plaintiffs to pay the full fines requested by Defendants as to the employer entities," which Plaintiffs describe as a "fishing expedition and extortion attempt."[100] Subsequently, however, Defendants voluntarily requested the dismissal of numerous entities that either were not associated with Defendants[101] or were not employers.[102] In the pre-ALJ hearing lists, Defendant Bayne explained that Defendants were proceeding with their claims against the other alleged "non-employer" entities because Plaintiffs had not provided sufficient information or evidence to convince Defendants that the entities did not require workers' compensation coverage.[103] Defendants may be playing some hardball, and

---

[97] At the motion hearing, Plaintiffs pretty much conceded that they would have an adequate opportunity in the state proceedings to "argue that the commission acted when it didn't have authority to do so." Tr. of May 25, 2021 Hr'g at 73.

[98] The Arkansas appellate courts are clear that any issue that can be litigated in the Court of Appeals can and should be raised in the AWCC hearing. *See infra* note 106.

[99] *Night Clubs, Inc.*, 163 F.3d at 479.

[100] Pls.' Br. in Supp. of Mot. for Prelim. Inj. (Doc. 3) at 3.

[101] *See, e.g.*, Ex. C (Case Statuses) to Pls.' Compl. (Doc. 1) at 30 ("I request that this be dismissed as in my zeal to serve the working men and women of Arkansas I assigned to Mr. Refugio Reyes a restaurant with which he has nothing to do.").

[102] *See, e.g.*, *id.* at 42 ("We request that this [case] be dismissed, as this company was formed on 12/26/2019, just before the Covid-19 Pandemic and was never opened.").

[103] *See, e.g.*, *id.* at 30 ("If Mr. Reyes's contention is that this business has never needed workers' compensation coverage, he has not been forthcoming with the facts which would convince me."), *id.* at 34 ("I was told that this

their investigation may have been less than ideal, but their actions do not rise to the level of "bad faith" or "harassment." Because the *Younger* factors show that abstention is appropriate, and because there is no bad faith, harassment, or other extraordinary circumstances that would make abstention inappropriate, the Court will abstain on this jurisdictional issue.

*Younger* abstention is similarly appropriate on Plaintiffs' claim that Ark. Code Ann. § 11-9-406(b)(2)(D) violates due process because it "unconstitutionally shifts the burden of proof to alleged employers" with respect to elements of the civil offense.[104] As with the first due process claim, there's no real dispute about the existence of an ongoing state proceeding or about the state's important interests at play here. And as with the first due process claim, Plaintiffs are wrong when they argue that they would not have the opportunity to litigate this issue in the state proceeding. If the AWCC's final order places the burden of proof with respect to an element of the civil offense on Plaintiffs, if it therefore finds against an employer when the AWCC has not met its burden of proof, and if doing so violates the federal or state constitutions, then the AWCC would be acting "in excess of its powers."[105] There should be little difficulty in seeing that a commission acts in excess of its powers if it acts in a way that violates the state or federal constitutions, regardless of whether that commission's actions are consistent with or even required by a statute. Accordingly, Plaintiffs will be able to argue this issue to the Court of Appeals if they lose in front of the

---

company never had employees. I requested a statement from the company's CPA to that effect and have never received anything. The company has been dissolved, but I do not what date, and I have received no records to indicate that they never operated.").

[104] Pls.' Am. Compl. (Doc. 25) ¶ 27.

[105] Ark. Code Ann. § 11-9-711(b)(4)(A).

AWCC.[106]  Finally, as was true of the first due process claim, there is no "bad faith, harassment, or some extraordinary circumstance that would make abstention inappropriate."[107]

For many of the same reasons, *Younger* abstention is appropriate on Plaintiffs' claims that "the AWCC denied Plaintiffs due process by providing a defective notice that incorrectly equates a civil penalty violation of Ark. Code Ann. § 11-9-406 with criminal prosecution."[108]  Again, if the Commission's notice was defective, and if proceeding on a defective notice would be violative of federal or state constitutional due process protections, then a final order from the AWCC that relied on the defective notice would be an action in excess of its powers.  Such an argument can be raised in the state proceeding, pursuant to § 11-9-711(b)(4)(A) and the caselaw cited *supra* in footnote 106.  As above, then, all three of the abstention factors favor abstention, and there is no bad faith, harassment, or other extraordinary circumstance to make abstention inappropriate.

Plaintiffs' Motion for a Preliminary Injunction appears to be based on the claims analyzed above.  Because the Court has determined that abstaining is the appropriate course on all these claims, the request for a preliminary injunction on these claims is DENIED.  The claims are STAYED.[109]  The parties are directed to inform the Court of the termination of the state

---

[106] The Arkansas appellate courts have clearly instructed the AWCC to allow constitutional challenges like this one so as to develop a record for potential appeal:

> even though the Workers' Compensation Commission may not have the authority to declare statutes unconstitutional, such constitutional issues should first be raised at the Administrative Law Judge or Commission level because such issues often require an exhaustive analysis that is best accomplished by an adversary proceeding, which can be done only at the hearing level.

*Carter v. Georgia-Pac. Resins, Inc.*, 368 Ark. 19, 22, 242 S.W.3d 616, 618 (2006) (quoting *Ark. Health Servs. Agency v. Desiderata, Inc.*, 331 Ark. 144, 148, 958 S.W.2d 7, 8 (1998); *Moses v. Hanna's Candle Co.*, 366 Ark. 233, 237, 234 S.W.3d 872, 874–75 (2006); *Hamilton v. Jeffrey Stone Co.*, 6 Ark. App. 333, 335, 641 S.W.2d 723, 725 (1982).

[107] *See supra* notes 99-103 and accompanying text.

[108] Pls.' Am. Compl. (Doc. 25) ¶ 29.

[109] The Court will stay rather than dismiss the case because Plaintiffs seek "actual, compensatory, and punitive damages" in addition to declaratory and injunctive relief.  Pls.' Am. Compl. (Doc. 25) ¶ 48.  "In cases where damages are sought in the federal suit, the Supreme Court instructs that traditional abstention principles generally require a stay as the appropriate mode of abstention."  *Night Clubs, Inc.*, 163 F.3d at 481.

proceedings, including all appeals, within fourteen (14) days of such termination. At that time, Plaintiffs may file a motion to lift the stay.

It is probably worthwhile to note that, even if the Court is wrong about abstention, it would not issue a preliminary injunction. The Supreme Court is clear that "[a] preliminary injunction is an extraordinary and drastic remedy," which "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion."[110] The Eighth Circuit has "enumerated four factors to be weighed by the district court in deciding whether to grant or deny preliminary injunctive relief."[111] Those four factors are: (1) whether there is a substantial probability that the movant will succeed at trial; (2) whether the moving party will suffer irreparable injury absent the injunction; (3) the harm to other interested parties if the relief is granted; and (4) the effect on the public interest.[112]

According to the Eighth Circuit, "the two most critical factors for a district court to consider in determining whether to grant a preliminary injunction are (1) the probability that plaintiff will succeed on the merits, and (2) whether the plaintiff will suffer irreparable harm if an injunction is not granted."[113] The Eighth Circuit has held that "an injunction cannot issue if there is no chance of success on the merits, and must be dissolved if the district court's findings of fact do not support the conclusion that there is a threat of irreparable harm."[114] Further, Supreme Court precedent "requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction."[115] A preliminary injunction cannot be issued where there is no risk of

---

[110] *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original).

[111] *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 112 (8th Cir. 1981).

[112] *Id.*

[113] *Chicago Stadium Corp. v. Scallen*, 530 F.2d 204, 206 (8th Cir. 1976).

[114] *Mid-Am. Real Est. Co. v. Iowa Realty Co.*, 406 F.3d 969, 972 (8th Cir. 2005).

[115] *Winter*, 555 U.S. at 22.

irreparable harm.[116]   In other words, irreparable harm is necessary but not sufficient for the issuance of a preliminary injunction.   Finally, with respect to preliminary injunctions of state laws and state action, the Eighth Circuit has made clear that the probability-of-success prong requires a "showing that the movant is likely to prevail on the merits" as opposed to the less rigorous "fair chance" standard used in other contexts.[117]

Plaintiffs' injunctive requests suffer from fatal defects.   For example, consider the request to preliminarily enjoin the alleged burden shift created by Ark. Code Ann. § 11-9-406(b)(2)(D).   What's the future irreparable harm that justifies such a preliminary injunction?   Plaintiffs seem to suggest that, without the allegedly unconstitutional burden shift, the AWCC would not move forward with the state process or would move forward in a more limited way.   If that were true, then a failure to issue an injunction might expose Plaintiffs to expenditures of time, money, and effort to which they would not otherwise be exposed and for which they cannot recoup.   But even if this could in some theoretical way be considered irreparable harm, Plaintiffs' suggestion is completely speculative.   Indeed, more than speculative, it is pretty clearly incorrect.   That is because Defendants (including the AWCC) currently believe the statute does not create a true burden shift—they read the statute to shift the burden of production but not the ultimate burden of persuasive.   That reading is, at best, incredibly strained.   But because the AWCC is currently of the view that they have the burden of persuasion, there is nothing at all to suggest that enjoining the statute would change the AWCC's decision to proceed in any way, shape, form, or size. Whatever monies, time, and effort Plaintiffs will be forced to expend in the absence of a

---

[116] *Id.*

[117] *Planned Parenthood Minnesota, N. Dakota, S. Dakota v. Rounds*, 530 F.3d 724, 730 (8th Cir. 2008).

preliminary injunction of this alleged burden shift, they will still have the same expenditures even if the injunction was granted.

Plaintiffs seem to recognize this problem. Their back-up argument is that a due process violation is in and of itself irreparable harm. That's not a bad argument. The Supreme Court has, for a long time now, made clear that a free speech violation in and of itself counts as irreparable harm.[118] Recently, the Supreme Court has broadened that principle to at least one other part of the First Amendment.[119] But the Supreme Court has not gone anywhere near as far as Plaintiffs propose going in this case. Plaintiffs cite a few district court cases that have held that an allegation of a due process violation is sufficient to demonstrate irreparable harm.[120] Plaintiffs do not, however, provide any circuit court cases reaching such a conclusion. This is not surprising. The Eighth Circuit has not ruled on this issue directly, but other circuits have concluded that a due process violation does not establish irreparable harm *per se*.[121] In a recent concurring opinion out of the Eighth Circuit, Judge Shepherd concluded that an "alleged due process violation alone cannot support a finding of irreparable harm," noting that "most courts to consider the issue" have

---

[118] *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

[119] *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (finding irreparable harm in a Free Exercise Clause case).

[120] Pls.' Suppl. Br. in Supp. of Mot. for Prelim. Inj. (Doc. 21) at 2 (citing *Hughbanks v. Dooley*, 788 F. Supp. 2d 988, 998 (D.S.D. 2011); *Stinnie v. Holcomb*, 355 F. Supp. 3d 514 (W.D. Va. 2018); *Yafai v. Cuccinelli*, No. 20 CIV. 2932 (AT), 2020 WL 2836975 (S.D.N.Y. June 1, 2020)). One of these cases involved an underlying First Amendment claim. *Hughbanks*, 788 F. Supp. 2d at 998 ("In order for Hughbanks to successfully argue that his due process rights are violated by the current policy, he must first establish that he has a protected First Amendment interest in receiving the rejected catalogs."). Another case discussed constitutional violations and the presumption of irreparable harm as dicta. *Stinnie*, 355 F. Supp. 3d at 532 ("Irreparable harm is clearly demonstrated *through the facts* surrounding Plaintiff Stinnie.") (emphasis added).

[121] *See, e.g.*, *Gonzalez-Droz v. Gonzalez-Colon*, 573 F.3d 75, 81 n.7 (1st Cir. 2009) ("The alleged denial of procedural due process, without more, does not automatically trigger a finding of irreparable harm.") (cleaned up) (quoting *Pub. Serv. Co. v. Town of W. Newbury*, 835 F.2d 380, 382 (1st Cir. 1987)); *Morton v. Beyer*, 822 F.2d 364 (3d Cir. 1987) (reversing a district court's grant of a preliminary injunction because the plaintiff did not show irreparable harm despite finding that plaintiff established a likelihood of success on the merits of plaintiff's claim that a pretermination hearing violated procedural due process)).

reached the same conclusion.[122]  I read the current precedent to strongly favor, if not require, the position that a due process violation in and of itself is insufficient to establish irreparable harm.

Consider another injunctive request from Plaintiffs. They ask the Court to prohibit Defendants from threatening Plaintiffs and other alleged employers with criminal prosecution.[123] What's the future irreparable harm that justifies this preliminary injunction?  These threats—to the extent one can characterize them as threats, which is highly debatable—have already been made. An injunction from this Court can't make the Plaintiffs forget those statements.  The idea that the proceeding will play out any differently depending on whether this Court issues such an injunction is entirely speculative.  Indeed, even if the Court issued an injunction requiring a new notice (that did not include the information about potential criminal proceedings) before a final order was entered, it's totally speculative to suggest that such relief would save Plaintiffs from some irreparable harm they would otherwise encounter during this process.[124]

---

[122] *Powell v. Ryan*, 855 F.3d 899, 907 (8th Cir. 2017) (Shepherd, J., concurring).

[123] *Id.* at 6.

[124] This is far from the only problem with this specific injunctive request.  Plaintiffs' chance of success on any claim associated with this injunctive request is essentially zero.  The letter accompanying the Proposed Order states that "the Commission" can assess "a fine."  Ex. B (Proposed Order) to Pls.' Compl. (Doc. 1) at 14.  It also says that the "subsection" declares non-compliance to be a criminal offense, but it does not state that the AWCC will enforce the criminal penalty.  *Id.*  More importantly, the Proposed Order attached to the letter does not contain any reference to criminal prosecution.  *Id.* at 16–21.  At first glance, the language may be alarming to the recipient, but a closer reading of the letter and Proposed Order reveals that only civil penalties would be imposed by Defendants at this stage.  One could even argue that the exclusion of the language would constitute defective notice, as criminal prosecution is in fact a possible ramification of non-compliance with workers' compensation laws.  Ark. Code Ann. § 11-9-406(a)(1) ("Any employer required to secure the payment of compensation under this chapter who fails to secure compensation shall be subject to a fine . . . or be guilty of a Class D felony."); *see also* Tr. of May 25, 2021 Hr'g at 31 (statement by Defendant Bayne: "My understanding is that we were to cite the entire statute" in the letter because "everyone needed to be fully informed, if they did not comply, if the commission ever decided to go through a prosecuting attorney and file.  If that language weren't in there, they would not have been advised that that was possible.").  In short, the Court cannot imagine a situation in which the language used by Defendants would amount to a constitutional violation.

Finally, because the abstention decision is so clear on the extra-jurisdictional claim and corresponding preliminary injunction request, the Court need not and will not belabor the point with yet another example. It suffices to say that, with respect to the preliminary injunction request on the extra-jurisdictional conduct issue, the Court believes that the likelihood-of-success prong, the balance-of-harms prong, and the public-interest prong cut in favor of the Defendants.

### III. CONCLUSION

Plaintiffs' Motion for a Preliminary Injunction is denied in its entirety. Defendants' Motion to Dismiss is granted to the extent that the Court will abstain under *Younger* as to the claims set forth in Section II of this Order. However, the Court will stay those claims instead of dismissing them. As to all of the other claims in the Complaint, the Court will address those claims in a subsequent order that analyzes and resolves the Defendants' recently-filed Motion to Dismiss the Amended Complaint. The Court will wait to do so until briefing on that Motion is complete.

IT IS SO ORDERED this 21st day of June 2021.

LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE